1

2

3

4

5

# UNITED STATES DISTRICT COURT

6

## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| 7  PAUL STANFORD, | No. 1:15-CV-03110-MKD |
| 8            Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY |
| 9       vs. | JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR |
| 10  CAROLYN W. COLVIN, | SUMMARY JUDGMENT |
| 11  Acting Commissioner of Social Security, | ECF Nos. 18, 20 |
| 12            Defendant. | |

13        BEFORE THE COURT are the parties' cross-motions for summary

14  judgment.  ECF Nos. 18, 20.  The parties consented to proceed before a magistrate

15  judge.  ECF No. 6.  The Court, having reviewed the administrative record and the

16  parties' briefing, is fully informed.  For the reasons discussed below, the Court

17  denies Plaintiff's motion (ECF No. 18) and grants Defendant's motion (ECF No.

18  20).

19

20

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."

*Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shineski v. Sanders*, 556 U.S. 396, 409-410 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

1  gainful activity," the Commissioner must find that the claimant is not disabled.  20

2  C.F.R. § 416.920(b).

3      If the claimant is not engaged in substantial gainful activity, the analysis

4  proceeds to step two.  At this step, the Commissioner considers the severity of the

5  claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from

6  "any impairment or combination of impairments which significantly limits [his or

7  her] physical or mental ability to do basic work activities," the analysis proceeds to

8  step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy

9  this severity threshold, however, the Commissioner must find that the claimant is

10  not disabled.  20 C.F.R. § 416.920(c).

11      At step three, the Commissioner compares the claimant's impairment to

12  severe impairments recognized by the Commissioner to be so severe as to preclude

13  a person from engaging in substantial gainful activity.  20 C.F.R. §

14  416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the

15  enumerated impairments, the Commissioner must find the claimant disabled and

16  award benefits.  20 C.F.R. § 416.920(d).

17      If the severity of the claimant's impairment does not meet or exceed the

18  severity of the enumerated impairments, the Commissioner must pause to assess

19  the claimant's "residual functional capacity."  Residual functional capacity (RFC),

20  defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. §

416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in

the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is

capable of performing past relevant work, the Commissioner must find that the

claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of

performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing other work in the national economy.

20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner

must also consider vocational factors such as the claimant's age, education and

past work experience.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant is capable of

adjusting to other work, the Commissioner must find that the claimant is not

disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to

other work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits.  20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that (1) the claimant is

1  capable of performing other work; and (2) such work "exists in significant

2  numbers in the national economy."  20 C.F.R. § 416.920(c)(2); *Beltran v. Astrue*,

3  700 F.3d 386, 389 (9th Cir. 2012).

4  ## ALJ'S FINDINGS

5  Plaintiff applied for Title XVI supplemental security income on June 1,

6  2011, alleging a disability onset date of July 1, 2010.  Tr.  197-202.  The

7  application was denied initially, Tr. 81-84, and on reconsideration, Tr. 88-91.

8  Plaintiff appeared at a hearing before an Administrative Law Judge (ALJ) on

9  August 15, 2013.  Tr. 38-60.  On December 10, 2013, the ALJ denied Plaintiff's

10  claim.  Tr. 19-31.

11  At step one, the ALJ found that Plaintiff has not engaged in substantial

12  gainful activity since June 1, 2011, the date Plaintiff applied for benefits.  Tr. 21.

13  At step two, the ALJ found Plaintiff has the following severe impairments: organic

14  mental disorder not otherwise specified (NOS); affective disorder NOS; anxiety

15  disorder NOS; and personality disorder NOS.  Tr. 21.  At step three, the ALJ found

16  that Plaintiff does not have an impairment or combination of impairments that

17  meets or medically equals a listed impairment.  Tr. 22.  The ALJ then concluded

18  that Plaintiff has the RFC to perform a full range of work at all exertional levels,

19  with the following non-exertional limitations:

20

He can perform simple and repetitive tasks. He should not have interactions with the general public or perform collaborative tasks with coworkers. He can tolerate superficial interactions with coworkers.

Tr. 24. At step four, the ALJ found that Plaintiff has no past relevant work. Tr. 28. At step five, the ALJ found that, considering Plaintiff's age, education, work experience and RFC, there are jobs in significant numbers in the national economy that Plaintiff could perform, such as production assembler, industrial cleaner, and hand packager. Tr. 29. On that basis, the ALJ concluded that Plaintiff was not disabled as defined in the Social Security Act. Tr. 31.

On May 4, 2015, the Appeals Council denied review, making the Commissioner's decision final for purposes of judicial review. *See* 42 U.S.C. 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 18. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly weighed the medical opinion evidence; and

2. Whether the ALJ properly discredited Plaintiff's symptom claims.

ECF No. 18 at 1.

**DISCUSSION**

**A. Medical Opinion Evidence**

First, Plaintiff faults the ALJ for discrediting the medical opinions of Russell Anderson, LICSW; Philip Rodenberger, M.D.; Tae-Im Moon, Ph.D.; and Rita Flanagan, Ph.D. ECF No. 18 at 5-19.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id*. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a

treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin,* 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss,* 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31) (9th Cir. 1995).

The opinion of an acceptable medical source such as a physician or psychologist is given more weight than that of an "other source." *See* SSR 06-03p (Aug. 9, 2006), *available at* 2006 WL 2329939 at *2; 20 C.F.R. § 416.927(a). "Other sources" include nurse practitioners, physician assistants, therapists, teachers, social workers, and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d). The ALJ need only provide "germane reasons" for disregarding an "other source" opinion. *Molina*, 674 F.3d at 1111. However, the ALJ is required to "consider observations by nonmedical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir. 1987).

### 1. Dr. Rodenberger and Mr. Anderson

In June 2011, Mr. Anderson, a clinical social worker, evaluated Plaintiff. Tr. 27 (citing Tr. 273-77). Plaintiff contends this evaluation was "concurred with

1   and signed" by psychiatrist Dr. Rodenberger, making it in effect Dr.

2   Rodenberger's opinion.  ECF No. 18 at 6 (citing Tr. 277).   Plaintiff is incorrect.[1]

3   The Court concludes, consistent with the ALJ's finding, that the opinion is Mr.

4   Anderson's.

5        Mr. Anderson opined that Plaintiff had marked limitations in the ability to

6   communicate and perform effectively in a work setting with public contact, Tr.

7   275.  The ALJ appeared to incorporate this limitation in the RFC, finding that

8   Plaintiff "should not have interactions with the general public."  Tr. 24.  In

9   addition, Mr. Anderson assessed several moderate limitations.  Tr. 27 (citing Tr.

10  275).  To the extent the ALJ gave little weight to Mr. Anderson's assessed

11  _____

12  [1] Defendant observes that even if the illegible signature is Dr. Rodenberger's, the

13  signature does not indicate agreement with, or endorsement of, the opinion.  ECF

14  No. 20 at 4.  The last page of the evaluation, signed and dated June 8, 2011, lists

15  only Mr. Anderson as the examiner.  Tr. 277.  The M.D.'s illegible signature is

16  signed and dated June 11, 2011, and merely states that the doctor is a "releasing

17  authority signature /title (for use by the Veteran's Administration) or area of

18  advanced training for ARNP."  Tr. 277.   Because Dr. Rodenberger did not endorse

19  the opinion, it is properly considered that of a social worker who is an "other

20  source."

moderate limitations,[2] he did so because Plaintiff's activities and later medical improvement were inconsistent with Mr. Anderson's opinion.  Tr.  23, 27-28.[3]

Mr. Anderson is a clinical social worker and as such is considered an "other source."  20 C.F.R. § 416.913 (d).  Because Mr. Anderson is an "other source"

---

[2] Mr. Anderson opined that Plaintiff had moderate limitations in the ability to (1) understand, remember, and persist in tasks by following complex instructions of three or more steps; (2) learn new tasks; and (3) communicate and perform effectively in a work setting with limited public contact.  Tr. 275.  It appears that only the last two are inconsistent with the assessed RFC.  *Compare* Tr. 275 *with* Tr. 24 (RFC limiting Plaintiff to simple, repetitive tasks, no public contact, and superficial interaction with co-workers).

[3] The ALJ relied on several sources that showed Plaintiff's reported activities were inconsistent with more dire limitations, including the evaluations of Dr. Toews (Tr. 280-293) and Dr. Moon (Tr. 338-342), and Plaintiff's improvement after treatment that contradicted some of Mr. Anderson's opinion, including the evidence the ALJ considered when he addressed the "paragraph  B" criteria of listings 12.02, 12.04, 12.06, and 12.08.  Tr. 23-24; Tr. 27-28 (citing 20 C.F.R. Pt. 404, Subpt. P., App. 1 §§ 12.02, 12.04, 12.06, and 12.08).

whose opinions about the nature and severity of Plaintiff's impairments are not entitled to controlling weight, the ALJ need only have provided "germane reasons" for rejecting his opinions. SSR 06-03p, 2006 WL 2329939 at *2; *Molina*, 674 F.3d at 1111. This Court finds that the ALJ properly discounted the limited portions of Mr. Anderson's opinion and gave germane reasons for doing so.

First, the ALJ found that some of Mr. Anderson's assessed limitations were inconsistent with Plaintiff's reported activities. Tr. 27. For instance, in September 2011, Plaintiff told Dr. Toews that he was fully independent for basic self care; had a full complement of independent living skills; lived alone in a trailer; and planned and prepared his meals. Tr. 26-27 (citing Tr. 281). With respect to household chores, Plaintiff told Dr. Toews that, although he was able to do housework and laundry, he "doesn't." Tr. 281-283. Plaintiff reported that he shopped for himself, but preferred to do so when fewer people were around; he received food stamps and shopped for groceries. Tr. 282-283. Plaintiff reported that he had a couple of friends. He communicated with personnel at the nursing home where his mother lived, and with store clerks when he shopped, as necessary. Tr. 282. Significantly, Plaintiff told Dr. Toews he went every day to visit his mother in the nursing home, Tr. 282-283, indicating the ability to go out alone and have some social interaction. The ALJ also relied on Plaintiff's reported activities in 2012 and 2013. Tr. 24, 26-27. The ALJ found, for example, that in February 2012, Plaintiff told Dr. Moon

that he went to the nursing home every day to visit, and help care for, his mother. Tr. 26 (citing Tr. 339).  In early 2013, Plaintiff told his medication manager that in recent months he attended church twice a week; Plaintiff also reported that he visited his mother's gravesite three times a week.  Tr. 26 (citing Tr. 509).  The ALJ relied on Plaintiff's testimony at the hearing in August 2013.  Plaintiff testified he lived with a friend, and on occasion, Plaintiff visited local parks.  Tr. 26 (citing Tr. 42-43, 49).  These activities are inconsistent with Mr. Anderson's opinion that Plaintiff's cognitive and social functioning is more limited.  An ALJ is not required to credit any opinion that is inconsistent with a claimant's daily activities, if the activities are supported by substantial evidence from the record as a whole.  *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600-02 (9th Cir. 1999).

Next, the ALJ found that Mr. Anderson's opinion was inconsistent with Plaintiff's improvement after treatment.  Tr. 27.  For example, the ALJ noted that Plaintiff began taking medication prescribed for depression in October 2011.  Tr. 25 (citing Tr. 300).  By early 2012, Plaintiff reported that his depression improved when he took prescribed psychotropic medication.  Tr. 25 (citing Tr. 367-68).  At the same appointment, Plaintiff displayed "no unusual anxiety or evidence of depression at this time."  Tr. 25 (citing Tr. 369).  In February 2013, the ALJ observed, Plaintiff reported that the medications helped, and "he felt he was doing okay or better."  Tr. 26 (citing Tr. 503).  The ALJ went on to note that Plaintiff

began regular psychotherapy in May of 2012.  Tr. 25 (citing Tr. 463).  Four months

later, at a medical appointment in September 2012, Plaintiff displayed normal

concentration and attention, and denied that he was unable to focus. Tr. 25-26

(citing Tr. 356, 358).  Because an ALJ may reject any opinion that is inconsistent

with the record as a whole, *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190,

1195 (9th Cir. 2004), and medical improvement can undermine the existence of

severe limitations, *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (a

favorable response to treatment can undermine a claimant's complaints of

debilitating pain or other severe limitations), the ALJ provided germane reasons

for discrediting some of Mr. Anderson's opinion.

   *2. Dr. Moon*

   Dr. Moon examined Plaintiff in February 2012.  Tr. 338-342.  She opined

that Plaintiff's ability to focus, maintain appropriate behavior at work, and interact

and communicate with the public were poor.  Tr. 28 (citing Tr. 338-341).  The ALJ

gave this opinion minimal weight.  Tr. 28.

   Because Dr. Moon's opinion was contradicted, the ALJ need only to have

given specific and legitimate reasoning supported by substantial evidence to reject

it.  *Bayli*ss, 427 F.3d at 1216.  This Court finds that the ALJ properly assigned Dr.

Moon's opinion "minimal weight."

1    First, the ALJ found the assessed limitations were inconsistent with the

2    results of the mental status exam (MSE) that Dr. Moon administered.  Tr. 28

3    (citing Tr. 340-341).  Such contradictions between a doctor's opinion and her own

4    medical results provides a permissible basis to reject her opinion.  *See Bayliss*, 427

5    F.3d at 1216.

6    Dr. Moon found that Plaintiff displayed normal eye contact; appropriate

7    speech; cooperative attitude; and logical thought process.  Both recent and remote

8    memory were good.  Tr. 28 (citing Tr. 340-341).  The ALJ found these results were

9    inconsistent with Dr. Moon's opinion that Plaintiff's ability to maintain appropriate

10    behavior at work and to "focus/remember and follow complex instructions" were

11    "poor."  Tr. 28 (citing Tr. 339).  This was a specific and legitimate reason to

12    discount Dr. Moon's assessed extreme limitations.

13    Second, the ALJ found that Dr. Moon's opinion was inconsistent with

14    Plaintiff's treatment records.  Tr. 28.  An ALJ may permissibly discount an opinion

15    when it is "contradicted by other statements and assessments" of a Plaintiff's

16    medical condition, *see Batson*, 359 F.3d at 1195, or is inconsistent with the record

17    as a whole, *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).

18    For example, in September 2011, Plaintiff told Dr. Toews that he had no

19    mental health treatment in the past fifteen years.  Tr. 25 (citing Tr. 281).  The ALJ

20    noted that Plaintiff's medication management provider observed throughout the

course of treatment that Plaintiff exhibited no impairment of memory or intellectual functioning.  Tr. 28 (citing, *e.g.,* Tr. 412 (October 2012); Tr. 418 (December 2012); Tr. 516 (February 2013) (no impairment of memory or intellectual functioning is noted)).  Further, the ALJ found that in November 2011, Plaintiff's therapist, Laurie Jones, MSW, assessed Plaintiff with intact memory, cooperative behavior, logical thought process, and the ability to maintain attention.  Tr. 25 (citing Tr. 308).  In addition, the ALJ found that in September 2012, Plaintiff's treatment provider Nancy Schwartzkopf, ARNP, noted that Plaintiff was "[n]egative for inability to focus[.]"  Tr. 28 (citing Tr. 358).   Because Dr. Moon's opinion is contradicted by other statements and assessments of Plaintiff's medical conditions, *see Batson*, 359 F.3d at 1195, and is inconsistent with the record as a whole, *Orn,* 495 F.3d at 631, the ALJ provided another specific and legitimate reason to discount Dr. Moon's assessed dire limitations.          Third, the ALJ found that Dr. Moon's assessed limitations were inconsistent with Plaintiff's daily activities.  Tr. 29 (citing Tr. 509-515).  An ALJ may discount an opinion that is inconsistent with a claimant's reported functioning.  *Morgan*, 169 F.3d at 601-02.

The ALJ found that Plaintiff's activities refuted Dr. Moon's more dire assessed limitations, and cited several examples.  Tr. 23; *see, e.g*., Tr. 223 (in July 2011, Plaintiff stated in his function report that he traveled outside of his home daily and performed his own shopping; in addition, he handled his own money);

Tr. 281-282 (in September 2011, Plaintiff told Dr. Toews that he was fully

independent in his personal care, shopping and household tasks, although he

admitted that he "doesn't" perform household chores); Tr. 509 (in March 2013,

Plaintiff stated that he visited his mother's gravesite three times a week; and he

continued to attend church twice a week).  Because an ALJ is not required to credit

any opinion that is inconsistent with a claimant's daily activities, as long as the

activities are supported by substantial evidence from the record as a whole, *see*

*Morgan*, 169 F.3d at 600-02, the ALJ provided another specific and reason

supported by the record for discrediting Dr. Moon's more extreme limitations.

### 3. Rita Flanagan, Ph.D.

Agency psychologist Dr. Flanagan reviewed the record in December 2011.

Tr. 27; Tr. 71-80.  Her review included the prior evaluation by Dr. Toews, in

September 2011.  Tr. 27 (citing Tr. 283).  Dr. Flanagan observed that Dr. Toews'

test results were of dubious validity due to Plaintiff's poor effort and motivation.

She opined, however, that Dr. Toews' evaluation demonstrated that Plaintiff was

able to comprehend and remember test instructions and test items.  She opined that

this indicated Plaintiff appeared to be capable of performing simple, repetitive

types of work activity, and should be limited to superficial social contact, and to

performing routine tasks.  Tr. 77-78.

Further, Dr. Flanagan opined that psychological impairments "may

occasionally interfere" with Plaintiff's ability to complete a normal work week. Tr. 77.  Plaintiff contends that the ALJ erred by rejecting this equivocal limitation. ECF No. 18 at 14-19 (citing Tr. 77).

As an initial matter, an opinion that a claimant might have difficulty under certain circumstances does not establish a limitation.  *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 691-92 (9th Cir. 2009) (an opinion that a claimant "is less likely to have difficulty" with "highly routinized, overlearned tasks with low cognitive demand" does not equate to an opinion that the claimant is incapable of working *except* under the recommended conditions) (italics original).  Similarly, Dr. Flanagan's opinion that Plaintiff's symptoms "may occasionally" interfere with his ability to complete a full work week does not state a limitation.

Even if considered a limitation, the ALJ did not err in discounting Dr. Flanagan's opinion.  The ALJ rejected Dr. Flanagan's opinion that the ability to maintain concentration and pace for routine tasks *may occasionally* interfere with Plaintiff's ability to complete a normal work week because it is contradicted by the record.  Tr. 27-28 (citing Tr. 77) (emphasis added).  An ALJ may discount a medical opinion that is inconsistent with a claimant's reported functioning. *Morgan,* 169 F.3d at 601-02.

For example, the ALJ found that Plaintiff told Dr. Moon he visited and helped care for his mother on a daily basis; the ALJ reasoned this indicated that

1    Plaintiff was able to adequately maintain concentration, persistence and pace for

2    simple tasks during a forty-hour work week.  Tr. 28 (citing Tr. 339).  The ALJ

3    further found that Plaintiff's consistent displays of psychological stability,

4    including a lack of impairment of memory or intellectual functioning, showed that

5    Plaintiff was able to maintain persistence and pace sufficiently to complete a

6    normal work week.  Tr. 28 (citing *e.g.,* Tr. 493 (in July 2013, no impairment of

7    memory or intellectual functioning noted); Tr. 341 (in February 2012, Dr. Moon

8    assessed good recent and remote memory); Tr. 356 (in September 2012, Plaintiff's

9    depression is stable); Tr. 358 (at same medical appointment, Plaintiff "has normal

10   attention span and concentration").

11        The Court finds the ALJ provided specific, legitimate reasons supported by

12   the record for rejecting some of Dr. Flanagan's opinion.

13        Plaintiff is correct that there is conflicting evidence in the record of

14   Plaintiff's functioning.  For example, Plaintiff contends that medication

15   management records "consistently noted significantly limiting social anxiety and

16   severe depressive symptoms."  ECF No. 18 at 12 (citing Tr. 412-14, 417-20, 429-

17   31, 435, 439-42, 444-46, 450-52, 454-57, 476-71).  However, as the ALJ pointed

18   out, Plaintiff's social functioning improved to the point that he attended church

19   twice a week, visited his mother's grave three times a week, and visited his mother

20   at a nursing home for several hours a day, every day.  Tr. 28 (citing Tr. 509).

"Where there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002) (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)). When evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (citation omitted). In reaching these findings, the ALJ is entitled to draw inferences logically flowing from the evidence. *Id.* (citations omitted).

**B. Adverse Credibility Finding**

Plaintiff next faults the ALJ for failing to provide specific findings with clear and convincing reasons for discrediting her symptom claims. ECF No. 18 at 25.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptom alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

1    Second, "[i]f the claimant meets the first test and there is no evidence of

2    malingering, the ALJ can only reject the claimant's testimony about the severity of

3    the symptoms if she gives 'specific, clear and convincing reasons' for the

4    rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

5    citations and quotations omitted). "General findings are insufficient; rather, the

6    ALJ must identify what testimony is not credible and what evidence undermines

7    the claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at 834); *Thomas,* 278 F.3d

8    at 958 ("[T]he ALJ must make a credibility determination with findings

9    sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily

10   discredit claimant's testimony."). "The clear and convincing [evidence] standard

11   is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759

12   F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278

13   F.3d 920, 924 (9th Cir. 2002)).

14       In making an adverse credibility determination, the ALJ may consider, *inter*

15   *alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the

16   claimant's testimony or between his testimony and his conduct; (3) the claimant's

17   daily living activities; (4) the claimant's work record; and (5) testimony from

18   physicians or third parties concerning the nature, severity, and effect of the

19   claimant's condition. *Thomas*, 278 F.3d at 958-59.

20

1    This Court finds the ALJ provided specific, clear and convincing reasons for

2   finding that Plaintiff's statements concerning the intensity, persistence, and

3   limiting effects of his symptoms were "not credible." Tr. 24.

4       *1. Poor Compliance with Testing*

5       First, the ALJ found that Plaintiff's poor compliance with a psychological

6   evaluation diminished Plaintiff's credibility. Tr. 24 (citing Tr. 282-284). An ALJ

7   may properly rely on a claimant's efforts to impede accurate testing of a claimant's

8   limitations when finding a claimant less than credible. *See Thomas,* 278 F.3d at

9   959 (citation omitted).

10       Here, the ALJ found that at an evaluation in September 2011, Dr. Toews

11   observed that Plaintiff appeared to be "minimally interested and poorly motivated,"

12   and compliance was marginal. Tr. 24-25 (citing Tr. 282). Dr. Towes opined that

13   test results were of "dubious validity. Motivation and effort appeared to be poor."

14   Tr. 25 (citing Tr. 282-283). The ALJ noted that Plaintiff's answer to many of Dr.

15   Toews' questions was "don't know." Tr. 25 (citing Tr. 282).

16       Due to Plaintiff's observed poor motivation and effort, Dr. Towes

17   administered the Test of Memory Malingering (TOMM) to assess the validity of

18   Plaintiff's responses. Tr. 25 (citing Tr. 283). Results were at chance level, which

19   Dr. Toews interpreted as meaning that Plaintiff gave "very poor cooperation with

20   testing." *Id.* Dr. Toews noted that Plaintiff's scores were all very low, falling at or

1    below the first percentile.  *Id.*  He pointed out that such scores, if valid, would

2    suggest functioning in the moderate range of mental retardation and severe

3    memory deficits.  Due to Plaintiff's poor effort, Dr. Toews opined that it was not

4    possible for him to obtain a valid estimate of Plaintiff's intellectual level, memory

5    functioning, or functional abilities.  Tr. 25 (citing Tr. 283).  Dr. Toews diagnosed,

6    in part, non-compliance with the assessment.  Tr. 25 (citing Tr. 284).

7        Because an ALJ may rely on a Plaintiff's failure to give maximum or

8    consistent effort during an evaluation in assessing credibility, the ALJ did not err

9    when he found that this diminished Plaintiff's credibility.

10        *2.  Improvement with Treatment*

11        Second, the ALJ discredited Plaintiff's testimony because the record shows

12   that Plaintiff's functioning improved with prescribed psychotropic medication and

13   therapy.  Tr. 24.  While it may be error "to reject a claimant's testimony merely

14   because symptoms wax and wane in the course of treatment," an ALJ may rely on

15   examples of "broader development" of improvement when finding a claimant's

16   testimony not credible.  *Garrison*, 759 F.3d at 1017-18.  Moreover, the

17   effectiveness of medication and treatment is a relevant factor in determining the

18   severity of a claimant's symptoms, 20 C.F.R. § 404.1529(c)(3), 416.929(c)(3); *see*

19   *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006)

20   (Conditions effectively controlled with medication are not disabling for purposes

of determining eligibility for benefits) (internal citations omitted); *see also*

*Tommasetti*, 533 F.3d at 1040 (a favorable response to treatment can undermine a

claimant's complaints of debilitating pain or other severe limitations).

The ALJ observed that Plaintiff began taking medication prescribed for

depression in October 2011. Tr. 25 (citing Tr. 300). In November 2011, Plaintiff

attended an intake appointment prior to beginning psychotherapy. Tr. 25 (citing

Tr. 307-09). The ALJ noted that Plaintiff displayed a disheveled appearance and

delayed speech, but also intact memory, unremarkable psychomotor activity,

cooperative behavior, logical thought process, and the ability to maintain attention.

Tr. 25 (citing Tr. 308). The ALJ explained that about three months later, in early

2012, Plaintiff reported that his depression improved when he used his prescribed

psychiatric medication. Tr. 25 (citing Tr. 367-368). At this appointment, Plaintiff

requested and was given a refill; he displayed "no unusual anxiety or evidence of

depression." Tr. 25 (citing Tr. 369). Thereafter, in February 2012, Dr. Moon

found that Plaintiff displayed normal eye contact, appropriate speech, a

cooperative attitude, and logical thought process, recent and remote memory were

good. Tr. 25 (citing Tr. 340-341).

The ALJ went on to explain that during medical examinations in March and

April 2012, Plaintiff demonstrated no unusual anxiety or evidence of depression.

Tr. 25 (citing Tr. 362, 365). He reported that his depression improved with

1  the use of medication, Tr. 25 (citing Tr. 360), although he wondered if he was

2  being treated as well as he could be.  The ALJ observed that in May 2012, Plaintiff

3  began regular psychotherapy, Tr. 25 (citing Tr. 463); and by June 2012, Plaintiff

4  reported improvement in his depression.  Tr. 25 (citing Tr. 461 (noting that today

5  Plaintiff's depression "is not so bad"); Tr. 459 (Plaintiff feels less sadness and less

6  fidgety since starting medications); Tr. 455 (Plaintiff's mood is less depressed)).

7  The ALJ further explained that in September 2012, Plaintiff's depression was

8  stable, concentration and attention were normal, and he denied an inability to

9  focus.  Tr. 25-26 (citing Tr. 356, 358).  Significantly, the ALJ found that during

10 medication management appointments in 2012 and 2013, Plaintiff consistently

11 displayed normal motor activity; coherent and spontaneous speech; cooperative

12 behavior; and no impairment of memory or intellectual functioning.  Tr. 23.[4]

13 Finally, the ALJ explained that in early 2013, Plaintiff reported improvement in his

14 emotional stability as he grieved his mother's recent passing.  Tr. 26 (citing Tr. 515

_____

16 [4]The ALJ cites Exhibit 11 (Tr.  418, 423, 430, 436, 440, 445, 451, 455) (2012) and

17 Exhibit 12 (Tr. 412, 486, 493, 500, 504, 510, 516) (2013) (each indicated normal

18 motor activity, coherent and spontaneous speech, cooperative behavior, and no

19 impairment of memory or intellectual function, although memory and intellectual

20 functioning were not formally tested).

1   (in February 2013, Plaintiff noticed the medications "helped"; he felt he was doing

2   "okay or better"); Tr. 503 (in April 2013, Plaintiff "wakes up upset but it is a lot

3   less now")).

4       Because an ALJ may find impairments that can be controlled with

5   medication are not disabling, the ALJ did not err when he found Plaintiff's

6   symptom complaints less than credible.  *Warre,* 439 F.3d at 1006 ("Impairments

7   that can be controlled effectively with medication are not disabling for the purpose

8   of determining eligibility for SSI benefits.").

9       *3.  Daily Activities*

10      Third, the ALJ found that Plaintiff's daily activities were inconsistent with

11  severe limitations and indicated the ability to persist at simple tasks and tolerate

12  routine social interactions.  Tr. 26.  A claimant's reported daily activities can form

13  the basis for an adverse credibility determination if they consist of activities that

14  contradict the claimant's "other testimony" or if those activities are transferable to

15  a work setting.  *Orn*, 495 F.3d at 639; *see also Fair v. Bowen*, 885 F.2d 597, 603

16  (9th Cir. 1989) (daily activities may be grounds for an adverse credibility finding

17  "if a claimant is able to spend a substantial part of his day engaged in pursuits

18  involving the performance of physical functions that are transferable to a work

19  setting.").  "While a claimant need not vegetate in a dark room in order to be

20  eligible for benefits, the ALJ may discredit a claimant's testimony when the

claimant reports participation in everyday activities indicating capacities that are

transferable to a work setting" or when activities "contradict claims of a totally

debilitating impairment." *Molina*, 674 F.3d at 1112-13 (internal quotation marks

and citations omitted).

Here, the ALJ found, for instance, that in July 2011 Plaintiff reported that he

was diligent and independent in his daily meal preparations and household chores.

Tr. 26 (citing Tr. 222).  Plaintiff reported that he traveled outside of his home on a

daily basis, shopped, and managed his own finances.  Tr. 26 (citing Tr. 223).  The

ALJ found that in September 2011, Plaintiff told Dr. Toews that he was fully

independent in his personal care; shopped; performed household tasks; and visited

family daily.  Tr. 26 (citing Tr. 281-83).  The ALJ further found that at an

evaluation in February 2012, Plaintiff reported to Dr. Moon that he helped care for

his ailing mother on a daily basis.  Tr. 26 (citing Tr. 339).  In March 2012, Plaintiff

reported to providers that he had started going to church twice a week in recent

months.  Tr. 26 (citing Tr. 509).  Further evidence supports the ALJ's finding,

although it is not specifically noted by the ALJ.  In July 2013, Plaintiff reported

that he was still active with a group at the church he attends; recently, Plaintiff

reported that he even went door-to-door fellowshipping "to invite people out to

church."  Tr. 429.  The ALJ went on to observe Plaintiff testified that he lived

with a friend and occasionally visited parks.  Tr. 26 (citing Tr. 42-43, 49).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 27

Moreover, prior to his mother's passing, he visited her in a nursing home every day for several hours.  These activities are inconsistent with Plaintiff's complaints of disabling limitations and further support the ALJ's credibility assessment.

### 4. Unemployment Benefits

Fourth, the ALJ relied on the inconsistency between Plaintiff applying for and receiving unemployment benefits, a process that required Plaintiff to indicate that he was ready, able, and willing to work, Tr. 203, and allegations that he suffered disabling impairments.  Tr. 26-27.  Here, the ALJ erred because the record did not establish whether Plaintiff "held himself out as available for full-time or part-time work," and only full-time work is inconsistent with disability allegations. *Carmickle v. Soc. Sec. Admin.*, 533 F.3d 1155, 1161-62 (9th Cir. 2008).

Nonetheless, in light of the other permissible reasons the ALJ provided for discrediting Plaintiff's testimony, this Court does not find the ALJ has committed reversible error.  *See Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record."), *see also Batson*, 359 F.3d at 1197 (holding that any error the ALJ committed in asserting one impermissible reason for claimant's lack of credibility did not negate the validity of the ALJ's ultimate conclusion that the claimant's testimony was not credible).

1    In sum, despite Plaintiff's arguments to the contrary, the ALJ provided

2  specific, clear, and convincing reasons, supported by the record, for rejecting

3  Plaintiff's testimony.  *See Ghanim*, 763 F.3d at 1163.

4                                 **CONCLUSION**

5    After review, the Court finds that the ALJ's decision is supported by

6  substantial evidence and free of harmful legal error.

7    **IT IS ORDERED:**

8    1.  Defendant's motion for summary judgment (ECF No. 20) is **GRANTED.**

9    2.  Plaintiff's motion for summary judgment (ECF No. 18) is **DENIED.**

10    The District Court Executive is directed to file this Order, enter

11  **JUDGMENT FOR THE DEFENDANT**, provide copies to counsel, and **CLOSE**

12  THE FILE.

13    DATED this 29th day of August, 2016.

14                          _S/Mary K. Dimke_
                              MARY K. DIMKE
15                     UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20